NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LARRY SHEMEN & SHERRI SHEMEN, | |
| Plaintiffs, | No. 22cv3026 (EP) (SDA) |
| v. | OPINION |
| THE CINCINNATI INSURANCE COMPANY, | |
| Defendant. | |

**PADIN, District Judge.**

Plaintiffs Larry Shemen and Sherri Shemen (the "Shemens" or "Plaintiffs") bring this insurance coverage dispute against Defendant the Cincinnati Insurance Company ("Cincinnati" or "Defendant") regarding a claim for water damage at their residence under a homeowner's insurance policy issued by Cincinnati to the Shemens. D.E. 1-1 ("Complaint" or "Compl.").

Cincinnati moves for summary judgment on the only remaining claim—breach of contract (Count I). D.E. 26-2 ("Motion" or "Mot.").[1] The Court decides the Motion without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1(b). For the following reasons, the Court will **GRANT** the Motion.

---

[1] For ease of reference, the Court refers to the brief in support of the Motion. As explained in the Procedural Background section *infra*, the notice of Motion is at D.E. 37.

I.  **BACKGROUND**

    A.  **Factual Background[2]**

        *1.  The Policy*

Cincinnati issued a homeowners insurance policy to the Shemens—policy number H01 0930309, effective October 17, 2020 through October 17, 2021—for the residence located at 220 Maple Street, Englewood, New Jersey 07631 (the "Property"). Def. Facts ¶ 1 (citing D.E. 26-3, Ex. A (the "Policy")).

Amongst other things, the policy covers direct "physical loss" to the Property caused by or resulting from a "Covered Cause of Loss" that occurs during the coverage term. *Id.* ¶ 2 (citing Policy § 1.A). "Covered Cause of Loss" means any "direct 'physical loss'" unless otherwise excluded or limited by the Policy. *Id.* ¶ 3 (citing Policy § 1.B).

Cincinnati asserts that the Policy excludes coverage for physical loss or damaged caused directly or indirectly by water, including by flooding, surface, water, and waterborne material, regardless of any other cause or event contributing concurrently or in any sequence to the loss. *Id.* ¶ 4. The Shemens, on the other hand, assert that the Policy does not exclude any and all damage caused directly or indirectly by water and argue that the word "water" is used in the Policy

---

[2] The facts are drawn from Defendant's Statement of Undisputed Material Facts, D.E. 26-1 ("Defs. Facts"), Plaintiff's Responsive Statement of Material Facts, D.E. 28-1 ("Pl. Facts"), and the exhibits referenced in these submissions. "[A] party asserting a fact is (or cannot be) genuinely disputed must support the assertion by (A) 'citing to particular parts of materials in the record . . .' or (B) 'showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Dor v. TD Bank*, No. 21-18955, 2023 WL 9017558, at *9 (D.N.J. Dec. 29, 2023) (quoting Fed. R. Civ. P. 56(c)(1)). Additionally, where parties opposing summary judgment disagree with the movant's statement of material facts, "they must indicate 'each material fact in dispute and cit[e] to the affidavits and other documents submitted in connection with the motion.'" *Id.* (quoting L. Civ. R. 56.1(a)). Facts unsupported by citations to record evidence are not considered and responses that do not cite to record evidence are deemed admissions. *See Vorhies v. Randolph Township Bd. of Educ.*, No. 16-587, 2020 WL 278761, at *1 n.2 (D.N.J. Jan. 16, 2020). A standalone fact without reference to a dispute denotes that the Court has deemed the factual allegation undisputed.

exclusions as a term of art that has a specific definition and only those forms of water damage caused by the specific hazards enumerated in Section 1.C.4.c of the Policy are excluded. Pl. Facts ¶ 4. Both parties cite to the same exclusion language of the Policy for their positions. The pertinent language from the Policy is as follows:

> 4. "We" will not pay for "physical loss" resulting directly or indirectly by any of the following. Such "physical loss" is excluded regardless of any other cause or event contributing concurrently or in any sequence to the "physical loss." These exclusions apply whether or not the "physical loss" event results in widespread damage or affects a substantial area
>
>> c. Water, meaning:
>>
>>> (1) Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;
>>>
>>> (2) Waterborne material carried or otherwise moved by any of the water referred to in C.4.c.(1); or
>>>
>>> (3) Water or waterborne material which backs up through sewars or drains, except as provided in Section I, A.5. Additional Coverage q. Sewer or Drain Back Up.
>>>
>>> This Exclusion (C.4.c.) applies regardless of whether any of the above, in C.4.c.(1) through C.4.c.(3), is caused by an act of nature or is otherwise caused.
>>>
>>> This Exclusion (C.4.c.) applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.
>>>
>>> However, direct loss by fire, explosion or theft resulting from any of the above, in C.4.c.(1) through C.4.c.(3), is covered.

Policy § 1.C.4.c.

### 2. *The Shemens' Claim*

The Shemens filed a claim with Cincinnati for water damage to the Property's basement and its contents which reportedly occurred on September 2, 2021 (the "Claim"). Def. Facts ¶ 6.

3

Christopher J. Sheridan, P.E., an engineer retained by Cincinnati to determine the cause of the loss, inspected the Property on September 17, 2021 and found that the damage to the Property was caused by "surface water accumulate[ing] in window wells on the . . . side of the house" and that "[s]urface water, clay, and debris entered the house through and around the windows and in these window wells." *Id.* ¶¶ 7-8 (citing D.E. 26-3, Ex. C ("Sheridan Report") at 3, 6).

On October 13, 2021, Cincinnati informed the Shemens that the Policy did not cover the damage to the Property's basement or the Shemens' personal property since the claimed damage was excluded under the Policy. *Id.* ¶ 9.

The Shemens then retained their own engineer, Harold Tepper, P.E., to inspect the property on or around May 5, 2023. *Id.* ¶ 10. Tepper concluded that "given the extent and intensity of rain that fell, rain water that fell directly on the ground flowed from areas of [the Shemens'] property into the window well, undoubtedly carrying debris with it . . . [i]t is reasonable to conclude that this water consisted of both rain water and water flowing over and into the window well from the surrounding topography." *Id.* ¶ 11 (citing D.E. 26-3, Ex. E ("Tepper Report") at 4).

B.   **Procedural Background**

The Shemens filed this action on April 22, 2022 in the Superior Court of New Jersey Law Division: Bergen County. Compl. On May 24, 2022, Cincinnati removed the case to this Court based on the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. D.E. 1. The Complaint originally asserted two counts—Breach of Contract (Count I) and Bad Faith (Count II). Compl. However, after the Shemens consented to the dismissal of the Bad Faith Claim, D.E.s 4-5, on June 6, 2022, the Court dismissed that claim without prejudice, D.E. 6. Cincinnati answered the Complaint on June 17, 2022. D.E. 7.

After an apparently unsuccessful mediation, on November 20, 2023, the parties reported that all fact discovery had been completed and that, *inter alia*, Cincinnati intended to file a motion

for summary judgment. D.E. 24. On January 12, 2024, Cincinnati filed its motion for summary judgment. D.E. 26. The Shemens filed an untimely opposition on March 10, 2024 without leave of Court. D.E. 28 ("Opposition" or "Opp'n").[3]

On March 22, 2024, Cincinnati moved to strike the Opposition as untimely. D.E. 31. On August 15, 2024, the Court, in its discretion, declined to strike the Shemens' untimely Opposition, administratively terminated the Motion, and directed Cincinnati to file a new notice of motion for its summary judgment motion and a reply brief by September 6, 2024. D.E. 35 at 5.[4] On September 6, 2024, Cincinnati filed a new notice of motion, D.E. 37, and a reply brief, D.E. 37-1 ("Reply"). This case was reassigned to the undersigned on December 3, 2024. D.E. 39.

## II.    LEGAL STANDARD

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248).

Under Rule 56, a court must view the evidence presented in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "conclusory, self-serving affidavits

---

[3] The Court previously noted that Plaintiffs' counsel had been admonished by the Court for failing to attend conferences and failing to abide by scheduling orders. D.E. 30.
[4] The Court presumed that the parties will otherwise rely on the previously filed motion papers. D.E. 35 at 5.

are insufficient to withstand a motion for summary judgment,[5]" *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002), and statements of undisputed material facts may not "rel[y] primarily on speculation and legal conclusions" or "fail[] to genuinely dispute the facts[.]" *Buxton v. Dougherty*, 821 F. App'x 70, 71 n.2 (3d Cir. 2020).

The movant bears the initial responsibility to establish the basis for the motion for summary judgment and to identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party bears the burden of proof on an issue, the moving party's initial burden can be met simply by "pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Unsworn allegations in memoranda and pleadings or allegations questioning the credibility of witnesses are insufficient to defeat a properly supported summary judgment motion. *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

---

[5] This rule extends to conclusory self-serving deposition testimony. *See Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011).

6

III.     ANALYSIS

The Shemens allege that Cincinnati breached the Policy by denying coverage of their Claim for water damage to the Property's basement and the Shemens' personal property.  *See generally* Compl.  As explained below, the Court finds that there is no dispute of material fact and that Cincinnati is entitled to summary judgment as a matter of law.

To state a claim for breach of contract under New Jersey law,[6] a plaintiff must establish (1) that a valid contract existed, (2) the defendant failed to perform under the contract, (3) causing injury.  *Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC*, 877 F. Supp. 2d 140, 149 (D.N.J. 2012) (citing *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (N.J. App. Div. 2007)).  The only element at issue here is the second—whether Cincinnati failed to perform their obligations under the Policy by not covering the Claim.

It is a rare instance where the Court addresses a motion for summary judgment where both parties agree that the material facts are largely undisputed.  As the Shemens put it: "[t]he primary dispute presented is one of policy interpretation."  Opp'n at 1.  Cincinnati argues that the Policy's exclusion of damage caused by "surface water," and "waterborne material"[7] carried by such flood or surface water, unambiguously applies to the rainwater that fell onto the ground and flowed into the Shemens' window well.  Mot. at 7-17.[8]  The Shemens argue that "surface water" is ambiguous and, because the Policy is a contract of adhesion, the more favorable meaning should apply and, if

---

[6] The parties agree that New Jersey law applies.
[7] The Motion is unclear on whether Cincinnati is also invoking the "flood" exclusion, Opp'n at 11, but the Reply clarifies by abandoning any argument as to the applicability of the "flood" exclusion for summary judgment purposes.  Reply at 3 ("The undisputed facts before this Court prove that the damage to the Property's basement was caused by surface water and waterborne material . . . .").
[8] The Shemens correctly note that the "waterborne material" exclusion is "entirely dependent upon the existence of either a 'flood' or 'surface water,' and therefore, the Court need not separately consider the "waterborne material" exclusion.  Opp'n at 11.

that exclusion applies, there is a material dispute of fact that precludes summary judgment. The Court agrees with Cincinnati.

A. **The Parties Respective Interpretations**

Cincinnati's expert determined that "excess rainwater accumulated due either to the extent of rainfall, reduced capability of storm mains or a combination of both . . . . Surface water accumulated in window wells . . . [and] water, clay, and debris entered the house through the windows around these wells." Sheridan Report at 6. The Shemens' expert concluded that "given the extent and intensity of rain that fell, rain water that fell directly on the ground flowed from areas of [the Shemens'] property into the window well, undoubtedly carrying debris with it . . . . It is reasonable to conclude that this water consisted of both rain water and water flowing over and into the window well from the surrounding topography." Tepper Report at 4. Therefore, the issue is whether, applying New Jersey law of contract interpretation, "surface water," as used in Section 1.C.4.c(1) of the Policy, unambiguously includes "water flowing . . . from the surrounding topography"—an occurrence the parties do not dispute.[9]

The Shemens argue that, as found by the Appellate Division in *Sosa v. Massachusetts Bay*, 458 N.J. Super. 639, 650-51 (N.J. App. Div. 2019), "surface water" is ambiguous and can have two different meanings. Opp'n at 15. Option A:

> "Surface water" has been defined to possess a permanent nature, akin to a body of water. *See* N.J.A.C. 7:7-16.4 (defining "surface water" as "water in lakes, ponds, streams, rivers, bogs, wetlands, bays, and ocean that is visible on land"); N.J.A.C. 7:9B-1.4 (defining "surface waters" as "water at or above the land's surface which is neither groundwater nor contained within the unsaturated zone, including, but not limited to, the ocean and its tributaries, all springs, streams, rivers, lakes, ponds, wetlands, and artificial waterbodies").

---

[9] The issue is not simply whether there are multiple meanings of the term "surface water"—rather, the issue is whether there is a plain and ordinary meaning of the term that does *not include* rainwater hitting the ground—*i.e.,* the water that indisputably entered the Shemens' Property here.

8

*Id.* at 650. Option B:

> Surface waters are those which fall on the land from the skies or arise in springs, and, following no defined course or channel, are lost by being diffused over the ground through percolation, evaporation, or natural drainage. They embrace waters derived from falling rain and melting snow, whether on the ground or on the roofs of buildings thereon.

*Id.* at 651.

Cincinnati argues that the Shemens' reliance on *Sosa* is misplaced in that *Sosa* is non-binding, incorrectly decided, and distinguishable, and that relevant caselaw demonstrates that there is no ambiguity in the term "surface water" which includes rainwater hitting the ground and flowing along the ground—Option B. Mot. at 7-17.

   B.   **The Term "Surface Water," As Used in Section 1.C.4.c(1) of the Policy, Unambiguously Includes the Water That Indisputably Caused the Damage at Issue in the Shemens' Claim**

The New Jersey Supreme Court's binding law on contract interpretation governs the Court's analysis. *See Oravsky v. Encompass Ins. Co.,* 804 F.Supp.2d 228, 233-34 (D.N.J. 2011) (quoting *McKenna v. Pacific Rail Serv.,* 32 F.3d 820, 825 (3d Cir. 1994)) ("[A] federal court sitting in diversity . . . [is] to apply state law as interpreted by the state's highest court."). In the absence of guidance from the state's highest court, district courts must "consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule." *Downs v. U.S. Pipe & Foundry Co.*, 441 F. Supp. 2d 661, 663 (D.N.J. 2006) (quoting *Gares v. Willingboro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996)). If, after considering the decision of an intermediate appellate court, the district court predicts that the state's highest court would hold otherwise, the district court is free to reach a contrary result. *See id.* (citing *Nat'l Surety Corp. v. Midland Bank*, 551 F.2d 21, 30 (3d Cir. 1977)).

   The New Jersey Supreme Court has instructed that insurance policies are reviewed using ordinary contract principles and will be "enforced as written when [their] terms are clear in order

9

that the expectations of the parties will be fulfilled." *Norman Int'l, Inc. v. Admiral Ins. Co.*, 251 N.J. 538, 552 (2022) (cleaned up). "Terms in the contract are given their plain and ordinary meaning." *Id.* (cleaned up). Exclusionary clauses, such as the clause at issue here, are "typically construed narrowly" and "courts apply the meaning that supports coverage rather than the one that limits it *if* the terms are ambiguous." *Id.* (cleaned up) (emphasis added). Whether a term is "ambiguous depends on the context in which it is being used"—"one cannot evaluate the 'ambiguity' of a phrase . . . in a vacuum." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 176 (1992).

The parties' respective attempts to find the definition of "surface water" under New Jersey law are somewhat misplaced. *E.g.*, Mot. at 12 ("Under New Jersey law 'surface water' encompasses . . . ."); Opp'n at 15 (referencing a definition found in N.J.A.C. 7:7-16.14). New Jersey law on contract interpretation instructs that the term be given its "plain and ordinary meaning." *Norman Int'l*, 251 N.J. at 552. Therefore, only sources that opine on "surface water's" plain and ordinary meaning in the relevant context bear on the Court's analysis.

The parties have not provided the Court with binding New Jersey Supreme Court precedent that opines on the plain and ordinary meaning of "surface water" in this context and the Court is unaware of any. Cincinnati points to a New Jersey Supreme Court case from the 1800s that describes surface water as "water falling upon [the land] from the clouds." *Bowlsby v. Speer*, 31 N.J.L. 351, 352 (N.J. 1865). However, *Bowlsby* did not involve the interpretation of the term in a contract such that the Court's description was a holding as to the term's plain and ordinary meaning. Moreover, as the Shemens point out, they do not dispute that this definition is *one* of the possible definitions of surface water—rather, they argue that there is another possible definition that excludes rainwater falling onto the ground. Opp'n at 16.

Cincinnati next points to the New Jersey Supreme Court case of *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 245 N.J. 104, 105 (2021). However, this case constitutes a one paragraph opinion affirming a lower court judgment that found no ambiguity in policy language finding that there was a "flood"—defined by the policy as "either '[t]he overflow, release, rising, back-up, runoff or surge of surface water;' or '[t]he unusual or rapid accumulation or runoff of surface water from any source'"—when a storm surge caused by Superstorm Sandy resulted in the flooding at issue. *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 461 N.J. Super. 440, 453, 454-55 (N.J. App. Div. 2019). The case does nothing to elucidate whether there is a plain and ordinary meaning of the term "surface water" that excludes rainwater falling onto the ground.[10]

In the absence of a controlling case on point from the New Jersey Supreme Court, the Court next looks at New Jersey intermediate appellate courts for guidance. *See Gares*, 90 F.3d at 725. The Shemens' only source in support of their argument that "surface water" is ambiguous is the New Jersey Appellate Division case of *Sosa v. Massachusetts Bay*. However, the Court finds that the *Sosa* is not analogous as the issue there was whether water from a water main, rather than a natural source, could constitute "surface water." *Sosa*, 458 N.J. Super. at 650. To the extent that *Sosa* stands for the proposition that there is a plain and ordinary meaning of "surface water" in the context of insurance coverage that does not include rain hitting the ground, the Court finds that such conclusion is incorrect and unlikely to be followed by the New Jersey Supreme Court in the face of overwhelming precedent to the contrary. *See infra*.

---

[10] Cincinnati's reliance on *Estate of Doerfler v. Fed. Ins. Co.*, Nos. A-4215-18T1, A-4217-18T1, 2020 WL 2488733 (N.J. App. Div. May 14, 2020) suffers from the same issue.

In *Sosa*, a municipal water-main pipe broke, causing water to flow from the street into the insured's garage and then basement apartment. *Sosa*, 458 N.J. Super. at 643. The insurer disclaimed coverage after concluding that the damage resulted from "surface and ground water intrusion" which, the insurer argued, was excluded by the policy's exclusion of "water damage." *Id.* at 643-44.

The insured argued that "surface water" is "natural water that has not penetrated much below the surface of the ground." *Id.* at 650. The insurer argued that "surface water" includes "any water found on the surface of land, regardless of its source or properties." *Id.* Thus, the *Sosa* court was tasked with determining whether water from an unnatural source—a water-main break—running across the ground was unambiguously "surface water." The court concluded that the definition of "surface water," in that context, was ambiguous. *Id.*

To find an ambiguity, the *Sosa* court looked to sections of the New Jersey Administrative Code related to coastal zone management and water quality. The court looked to N.J.A.C. 7:7-16.4 which defines "surface water" as "water in lakes, ponds, streams, rivers, bogs, wetlands, bays, and ocean that is visible on land" and N.J.A.C. 7:9B-1.4 which defines "surface waters" as "water at or above the land's surface which is neither groundwater nor contained within the unsaturated zone, including, but not limited to, the ocean and its tributaries, all springs, streams, rivers, lakes, ponds, wetlands, and artificial waterbodies." *Id.* The court then compared those Administrative Code definitions with the definition found in *Nathanson v. Wagner*, 118 N.J. Eq. 390 (N.J. Ch. 1935) that defines "surface waters" as, "those which fall on the land from the skies or arise in springs, and, following no defined course or channel, are lost by being diffused over the ground

12

through percolation, evaporation, or natural drainage." *Id.* at 650-51 (quoting *Wagner*, 118 N.J. Eq. 390 at 393).[11]

There are two problems with relying on *Sosa* to find an ambiguity in *this* case. *First*, the *Sosa* court was not tasked with determining whether there was a plain and ordinary meaning of "surface water" that could exclude the water at issue here—rainwater hitting the ground. The *Sosa* court's analysis was focused on determining whether there is a definition of "surface water" that could include unnatural water sources—such as a water-main break. *See Sosa*, 458 N.J. Super. at 650. Therefore, *Sosa*'s holding stands only for the proposition that there is ambiguity as to whether "surface water" includes water that comes from artificial sources. Indeed, understanding *Sosa*'s holding as limited in this fashion is not controversial as other courts have held that "where water comes from artificial sources, it cannot constitute surface water." *Johnson*, 572 F. Supp. 3d at 459 (citing *Auto-Owners Ins. Co. v. United Way of E. Cent. Alabama*, 497 F. Supp. 3d 1115, 1121 (N.D. Ala. 2020); *Comley v. Auto-Owners Ins. Co.*, 563 S.W.3d 9, 12 (Ky. 2018)).

*Second*, *Sosa*'s reliance on the New Jersey Administrative Code evidenced that it impermissibly considered the definition of "surface water" in a vacuum rather than in the context in which the term is being used. *See Voorhees*, 128 N.J. at 176. The Administrative Code sections relied upon by *Sosa* relate to coastal zone management and water quality. N.J.A.C. 7:7-16.4; 7:9B-1.4; *see Johnson*, 572 F. Supp. 3d at 458. They are technical definitions found in a completely different context—far from the "plain and ordinary meaning" of terms that governs contract interpretation under New Jersey law. *Norman Int'l, Inc.*, 251 N.J. at 552.[12]

---

[11] *Nathanson* involved the issue of whether a landowner has the right to injunctive relief against an adjoining landowner to stop the flow of surface water onto her property. The court did not consider the meaning of "surface water" employing rules of contract interpretation.

[12] Indeed, the New Jersey Administrative Code cautions against using this definition out of context by limiting the scope of the Code's application "to actions and decisions by the Department [of

13

As the Court is unpersuaded that *Sosa* controls the outcome of this case, the Court is left with the overwhelming acceptance by courts around the country that "surface water" unambiguously includes rainwater hitting the ground.

In *Rose Ann Int'l v. Hartford Ins. Co*, No. 03-698, 2005 WL 8175960, at *3 n.3 (D.N.J. Aug. 4, 2005), a court in this District, applying New Jersey substantive law to an insurance policy, looked at how other courts typically define "surface water" and concluded that "[t]he Court deems the term 'surface water' self-explanatory; however, to alleviate any doubt, it notes that 'surface water' is generally defined as 'water from melted snow, falling rain, or rising springs, lying or flowing naturally on the earth's surface.'" (citations omitted). In other words, the court in *Rose Ann Int'l*, interpreting an insurance policy under New Jersey law, found that the term "surface water" is unambiguous and includes rainwater that hits the ground—the result advocated by Cincinnati here.

The Court is particularly persuaded by the thorough analysis of this issue in *Johnson v. State Farm Fire & Cas. Co.*, 572 F. Supp. 3d 454 (W.D. Tenn. 2021). There, an insured's property was damaged due to rainwater that hit the ground and then entered the property. *Id.* at 455. Tennessee law applied to the policy at issue in *Johnson*. *See id.* at 457. The Shemens discount the applicability of *Johnson* because the case does not interpret New Jersey law. Opp'n at 18-19. While true, this criticism of *Johnson* misses the point. Here, the New Jersey Supreme Court has not provided a binding definition of "surface water" in the context of interpreting a similar policy or contract. Similarly, the *Johnson* court recognized that the "Tennessee Supreme Court had not

---

Environmental Protection] . . . on uses and development of coastal resources within or affecting the coastal zone," N.J.A.C. 7:7-1.2, and "governing matters of policy" with respect to, *inter alia*, quality standards and restrictive uses of surface waters of the State pursuant to New Jersey environmental statutes N.J.S.A. 13:1D–1 *et seq.*, the New Jersey Water Pollution Control Act, N.J.S.A. 58:10A–1 *et seq.*, and the Water Quality Planning Act, N.J.S.A. 58:11A–1 *et seq.*

defined 'surface water' in the insurance context." *Johnson*, 572 F. Supp. 3d at 458. In the absence of such binding authority, the *Johnson* court surveyed various sources, including courts around the country, searching for whether the term "surface water" has an unambiguous meaning in the insurance context that would be adopted by the Tennessee Supreme Court. The Court finds that *Johnson*'s approach is correct and that the New Jersey Supreme Court would, if faced with this issue, conduct a similar analysis and come to the same conclusion.

The *Johnson* court first looked at the definition of "surface water" provided by Black's Law Dictionary: "water lying on the surface of the earth but not forming part of a watercourse or lake. Surface water most commonly derives from rain, springs, or melting snow." *Id.* at 458 (quoting *Surface Water*, Black's Law Dictionary (11th ed. 2019)).

The court then identified that high courts in Massachusetts, Nebraska, Colorado, Wyoming, and Michigan have all adopted equivalent definitions. *Id.* (citing *Boazova v. Safety Ins. Co.*, 462 Mass. 346, 354 (2012); *Thorell v. Union Ins. Co.*, 242 Neb. 57, 62 (1992); *Heller v. Fire Ins. Exch., a Div. of Farmers Ins. Grp.*, 800 P.2d 1006, 1008-09 (Colo. 1990); *State Farm Fire & Cas. Co. v. Paulson*, 756 P.2d 764, 768 (Wyo. 1988); *Fenmode, Inc. v. Aetna Cas. & Sur. Co. of Hartford, Conn.*, 303 Mich. 188, 192 (1942)).

The *Johnson* court next turned to Federal circuit courts, interpreting the substantive laws of various states, for guidance and identified that the First, Third, Sixth, Ninth, and Eleventh Circuits have also adopted equivalent definitions. *Id.* (citing *Lucky Leather, Inc. v. Mitsui Sumitomo Ins. Grp.*, 650 F. App'x 364, 364 (9th Cir. 2016); *Fidelity Co-op. Bank v. Nova Cas. Co.*, 726 F.3d 31, 40 (1st Cir. 2013); *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Se.*, 492 F. App'x 16, 20 (11th Cir. 2012); *T.H.E. Ins. Co. v. Charles Boyer Childrens Tr.*, 269

15

F. App'x 220, 222 (3d Cir. 2008); *Front Row Theatre, Inc. v. Am. Mfr's. Mut. Ins. Cos.*, 18 F.3d 1343, 1347 (6th Cir. 1994)).

In light of this overwhelming authority, the Court finds that if the New Jersey Supreme Court were presented with the question here, it would hold that the definitions found in N.J.A.C. 7:7-16.14, 7:9B-1.4, relied upon in *Sosa*, that exclude rainwater falling on the ground, do not represent a plain and ordinary meaning for the term "surface water" in the context of this case. Therefore, as a matter of law, the unambiguous "surface water" exclusion applies to the undisputed fact that rainwater hit the ground, entered the Shemens' Property, and caused the damage at issue in their Claim. This conclusion results in summary judgment being awarded in favor of Cincinnati as there is no material dispute that Cincinnati did not breach its contract by failing to cover the Shemens' Claim.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Cincinnati's Motion for summary judgment.

Dated: May 22, 2025

                                                                            Evelyn Padin, U.S.D.J.